**Stanley SCHNEIDER, et al.,**

v.

**Judith COOPER, et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs Sept. 20, 1995.

Decided June 24, 1996.

Keith R. Varner, Lipman & Katz, P.A., Augusta, for Plaintiffs.

U. Charles Remmel, II, Leland Chisholm, Kelly, Remmel & Zimmerman, Portland, for Defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, DANA and LIPEZ, JJ.

LIPEZ, Justice.

Judith Cooper appeals from an order of the Superior Court (Penobscot County, *Pierson, J.*) approving an attachment and trustee process in the amount of $142,327.10. Cooper contends on appeal that the court abused its discretion in granting the motion of Stanley Schneider and Martin Schneider for an attachment because the affidavits filed in support of that motion were insufficient to support a conclusion that it is more likely than not that they will prevail in an amount equal to or greater than $142,327.10. We agree and vacate the order.

*Background*

In 1977, Stanley and Martin Schneider as limited partners and Judith Cooper as the general partner formed a limited partnership known as Park Street Associates. Cooper has at all times been, and continues to be, the general partner of Park Street. The Schneiders have continuously served as limited partners since the inception of the partnership. The partnership agreement named Cooper's husband Darrell as managing agent of the partnership.

In February 1989, the Schneiders filed a complaint against the Coopers, alleging breach of the fiduciary duties owed by Judith as a general partner and Darrell as the managing agent. The Schneiders alleged that the breaches consisted of the Coopers'

refusal to provide a formal partnership accounting in violation of 31 M.R.S.A. § 160(B) (1978),[1] their refusal to allow the Schneiders to inspect the partnership's financial records on demand in violation of the written partnership agreement, and their causing the partnership to make improper payments and enter into improper transactions for their individual benefit. The Schneiders demanded a judicial accounting for the purposes of determining the extent of their damage, and general as well as punitive damages.

The Schneiders subsequently filed a first amended complaint that named various additional defendants[2] and added a claim for treble damages pursuant to the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964(C) (1984 & Pamph. 1996), and a claim for tortious interference with an advantageous business relationship. Ultimately, the actions against the Coopers and the actions against the additional defendants were consolidated[3] and the RICO count dismissed, leaving the following three causes of action for litigation: (1) that the Coopers breached their fiduciary duties to the partnership by failing to provide the requested accounting; (2) that the Coopers caused the partnership to make improper payments and to engage in improper transactions for their benefit, to the detriment of the partnership; and (3) that the business entities that purchased land from the partnership tortiously interfered with an advantageous business relationship between the Schneiders and the partnership.

Darrell Cooper filed a petition for relief under the Bankruptcy Code, thereby staying the litigation against him. *See* 11 U.S.C. § 362 (1993 & Supp.1996). Subsequently, the Schneiders filed a motion to sever their claims against Darrell in order to proceed to trial against Judith Cooper and the other defendants. The court granted the motion.

The Schneiders filed a motion for the approval of an attachment and trustee process against Cooper's property in the amount of $142,327.10, the total amount allegedly contributed by them in the form of initial investments in the partnership, as well as loans and advances to the partnership. The Schneiders' motion was accompanied by two affidavits. The first affidavit, signed by Martin Schneider, detailed his and Stanley's financial contributions to the partnership. The second affidavit, signed by the Schneiders' attorney Keith Varner, was accompanied by Cooper's deposition testimony that she did not understand her role as the general partner of Park Street.

The Schneiders also filed a motion for an expedited hearing on their motion for the approval of an attachment, together with another affidavit signed by Varner. In the affidavit, Varner stated that: (1) Cooper had failed to account to the partnership for the proceeds of a $72,000 sale of real estate made by the partnership in 1993; (2) that Darrell had testified under oath at a recent meeting of creditors in the bankruptcy proceeding that the balance of the partnership's bank account was approximately $300; and (3) that the Coopers' residence in Bangor was listed for sale.

The court held the expedited hearing telephonically over Cooper's objection and granted the motion for approval of an attachment and trustee process, finding that it was more likely than not that the Schneiders would

---

**1.** 31 M.R.S.A. § 160(B) *is a section of the Maine Uniform Limited Partnership Act, 31 M.R.S.A. §§ 151–184 (1978), that was in effect when this litigation began. On January 1, 1992, the Maine Revised Uniform Limited Partnership Act, 31 M.R.S.A. §§ 401–530 (Pamph.1995) repealed and replaced the Uniform Limited Partnership Act. P.L.1991, ch. 552, § 2 (eff. Jan. 1, 1992). Section 524 of the Revised Act makes the Revised Act applicable to all limited partnerships in existence on its effective date. 31 M.R.S.A. § 524.*

**2.** The defendants named in the Schneiders' first amended complaint were various business entities that purchased land from the partnership.

**3.** *Despite the caption "first amended complaint," the document with that title was not a true amended complaint, but rather a distinct complaint against defendants other than the Coopers. In recognition of the fact that the complaint and first amended complaint set forth separate causes of action and named different defendants, the court assigned them different docket numbers. Despite their nomenclature, the complaint and first amended complaint were properly consolidated by the court.*

recover a judgment from Cooper of at least $142,327.10. Cooper appealed the court's order approving the attachment.

## Discussion

■ Pursuant to M.R.Civ.P. 4A, an attachment of real estate, goods and chattels is available to satisfy any judgment recovered by a plaintiff *if* that plaintiff can establish that it is "more likely than not that [she] will recover judgment ... in an amount equal to or greater than the ... attachment...." M.R.Civ.P. 4A(a) & (c). A plaintiff is required to submit affidavits in support of a motion for an approval of an attachment. M.R.Civ.P. 4A(c). Pursuant to M.R.Civ.P. 4A(i), the affidavits must "set forth specific facts sufficient to warrant the required findings," *i.e.,* facts which warrant a finding that it is more likely than not that the plaintiff will prevail at trial in an amount which at least equals the amount sought to be attached. We review orders of attachment for clear error or an abuse of discretion. *Wilson v. DelPapa,* 634 A.2d 1252, 1253 (Me.1993).

## Liability

■ A partnership is fiduciary in character. *See Rosenthal v. Rosenthal,* 543 A.2d 348, 352 (Me.1988); *Dalton v. Austin,* 432 A.2d 774, 777 (Me.1981); 68 C.J.S. *Partnership* § 76 (1950). The fiduciary duties of a partner include the following: diligence, good faith in dealing with partners about the subject matter of the partnership, disclosure of information affecting the status and affairs of the partnership, refraining from taking advantage of partners by any means, and providing an accounting of the partnership property. 31 M.R.S.A. §§ 301, 302, & 443 (1978); *Rosenthal,* 543 A.2d at 352 (delineating fiduciary duties encompassed by sections 301 and 302 of the Uniform Partnership Act); *Dalton,* 432 A.2d at 777 (discussing duty to provide an accounting). The uncontroverted evidence presented by the Schneiders establishes that Cooper owed the Schneiders fiduciary duties. The Schneiders also produced evidence in their affidavits that Cooper breached her fiduciary duty to them by failing to account for the disposition of partnership property and by failing to deal in good faith with the limited partners, including themselves. Although Cooper generally denied any breach of a fiduciary duty in her answer to the Schneiders' complaint, she did not oppose their motion for the approval of an attachment with written submissions or affidavits.[4] Under these circumstances, the Schneiders met the "more likely than not" standard required by Rule 4A(c) on the liability issue.

## Damages

In their complaint, the Schneiders request a judicial accounting for the purpose of ascertaining their damages. Thus they do not presently have sufficient information about the partnership's affairs to calculate the damages flowing to them from Cooper's tortious conduct. Moreover, they are not entitled to damages in the amount of their total contributions and loans to the partnership simply because they were forced to seek a judicial accounting.

A formal judicial accounting is a systematic and thorough financial review of a partnership's affairs. II Bromberg & Ribstein, *On Partnership* § 6.08(d) (1988, 1992, 1994 & Supp.1995). The court conducts a comprehensive investigation of the transactions undertaken by the partnership and partners, determines the partners' relative rights, and enters a money judgment in favor of or against each partner according to the determined balance. *Id.* at § 608(a). At common law, because of the atmosphere of distrust that typically existed between partners at the point of seeking a judicial accounting, accounting actions were usually accompanied by a dissolution of the partnership. *Id.* at § 6.08(b). The Maine Uniform Partnership

4. At the time of the expedited hearing and the court's decision to grant the Schneiders' motion for approval of attachment, Cooper had not filed any papers in opposition to the motion. The normal twenty-one day time period for filing responsive papers had not yet lapsed, however. The court acted after asking counsel for Cooper if he could represent that there would be no conveyances of Mrs. Cooper's property or any further liens placed on her property prior to the date of a regularly scheduled hearing on the motion. Counsel for Cooper could not so represent.

Act, however, which governs general partnerships and limited partnerships to the extent not inconsistent with the provisions of the Maine Revised Limited Partnership Act, 31 M.R.S.A. § 286 (1978), specifically makes formal accounting available prior to and independent of a dissolution, 31 M.R.S.A. § 302 (1978). Finally, a limited partner's right to receive the fair value of his interest in the partnership and his right to a priority distribution of amounts loaned to the partnership (if he is a creditor of the partnership) is triggered by the dissolution of the partnership or his withdrawal from the partnership, and not by the mere occurrence of an accounting. *See* 31 M.R.S.A. §§ 464, 466, 484(1)(A) (Supp.1995).[5]

■ According to the record, the Schneiders have not applied for a judicial dissolution of the partnership or given notice of their withdrawal therefrom. Thus neither their right to receive the fair value of their interest in the partnership nor their right to a priority distribution of the amounts loaned to the partnership has been triggered, 31 M.R.S.A. §§ 464, 466, 484(1)(A). Moreover, contrary to the assertion of the Schneiders, there is no necessary connection between the value of their contributions and loans to the partnership and the damages they have incurred because of Cooper's breach of her fiduciary duties. That connection requires a degree of proof lacking in the record at the time of the hearing on the motion for an attachment.

Because the Schneiders did not meet their burden of establishing that they were more likely than not to recover in an amount equal to or greater than their original investment in and loans to the partnership, it was clear error for the court to grant the Schneiders' motion for the approval of an attachment.

The entry is:

5. The two cases cited by the Schneiders in their memorandum in support of their motion for the approval of the attachment, *Waldo Lumber Co. v. Metcalf*, 132 Me. 374, 171 A. 395 (1934), and *A. Willmann & Assocs. v. Penseiro*, 158 Me. 1, 176 A.2d 739 (1962), predate both the Maine Uniform Partnership Act and the Maine Revised Limited Partnership Act. When we stated in *Penseiro*

Order approving attachment and trustee process vacated.

All concurring.

that the goal of a judicial accounting is to restore to the complaining party his original investment, *Penseiro*, 158 Me. at 8, 176 A.2d 739, that statement contemplated the inevitable dissolution of the partnership. Pursuant to the present statutory scheme that governs partnerships, dissolution does not necessarily follow an accounting.