MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2022 ME 4
Docket:        Yor-21-144
Argued:        December 9, 2021
Decided:       January 13, 2022

Panel:         STANFILL, C.J., and MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

JACKSON LUMBER & MILLWORK CO., INC.

v.

ROCKWELL HOMES, LLC, et al.

HUMPHREY, J.

[¶1]  In ruling on a motion for approval of attachment and trustee process filed by Jackson Lumber & Millwork Co., Inc., the Superior Court (York County, *Douglas, J.*) concluded that because Jackson Lumber was both the mortgagee and the "purchaser at the public sale" of foreclosed property in Lebanon, Maine, the fair market value of that property as established by an independent appraisal—not the value established by the highest bid at the public sale—was used in determining the amount of any deficiency.  14 M.R.S. § 6203-E (2021). Jackson Lumber appeals from the court's denial of its motion for approval of attachment and trustee process in the amount of $620,942.63 against the real and personal property of mortgagor Rockwell Homes, LLC, and individual guarantors Rock Bisson, Rock Bisson II, and Aaron Wiswell, arguing that the

2

court erred in treating Jackson Lumber as the "purchaser at the public sale" of the property when it had assigned its rights under the purchase and sale agreement to another entity and was not the party that received the deed.[1] We affirm the court's order denying Jackson Lumber's motion.

## I. BACKGROUND

[¶2] The facts found by the court in reaching its decision are, except as noted, supported by the affidavits and attached exhibits submitted in conjunction with the motion for approval of attachment and trustee process. *See Libby O'Brien Kingsley & Champion, LLC v. Blanchard*, 2015 ME 101, ¶ 5, 121 A.3d 109. In September 2017, Rockwell Homes borrowed $1,300,000 from Jackson Lumber to acquire real property in Lebanon. The loan was secured by a mortgage on the property, and Wiswell executed a promissory note on behalf of Rockwell Homes. The note also included personal guaranties executed by the Bissons and Wiswell. Rockwell Homes defaulted on the note in September 2018.

---

[1] Separately, the court approved attachment and trustee process against the real and personal property of Rock Bisson in the amount of $300,000 based on a separate line of credit that Bisson opened with Jackson Lumber on behalf of "Bisson Const" and personally guaranteed. That ruling is not challenged on appeal and will not be discussed further. The court also reached findings about a November 2018 promissory note and mortgage on property in Sanford, but the complaint did not allege a deficiency on that note or seek any recovery on it, and that note is not pertinent to our discussion here.

[¶3]  In January 2019, the CEO and treasurer of Jackson Lumber sent emails to Wiswell informing him that the balance due on the loan was $1,041,026.95 and that an appraisal showed the Lebanon property against which that debt was secured had an "as is" value of $1,100,000.  In March 2019, Jackson Lumber provided notice of default and demanded payment in full of all amounts due on the note secured by the Lebanon property—the sum of $1,070,918.37.[2]

[¶4]  On April 22, 2019, acting pursuant to 14 M.R.S. § 6203-A (2021), Jackson Lumber provided notice to Rockwell Homes, the Bissons, and Wiswell of its intention to foreclose on the mortgage by public sale of the Lebanon property on May 23, 2019.  The public sale was conducted as scheduled, and Jackson Lumber was the highest bidder at $550,000.  Jackson Lumber executed a purchase and sale agreement naming itself as both the seller and "Purchaser" of the Lebanon property.

[¶5]  On July 15, 2019, Jackson Lumber assigned its rights under the purchase and sale agreement to Robert DiBerto in exchange for $600,000.

---

[2] Although the court characterized the March 2019 communication as providing to the relevant mortgagors and guarantors a "Notice[] of Intention to Foreclose and Liability for Deficiency" as to the secured debt, that finding is erroneous.  The March 2019 communication was a notice of default and demand for payment of the note secured by the mortgage on the Lebanon property; the notice of intention to foreclose and liability for deficiency as to the property followed in April.  This erroneous but unchallenged factual finding does not affect the issue of statutory construction raised on appeal.

4

DiBerto then assigned his rights to Agamenticus Holdings, LLC, and on August 15, 2019, Jackson Lumber conveyed the property to Agamenticus.

[¶6] Jackson Lumber filed a complaint in the Superior Court on November 25, 2019, seeking monetary damages, attorney fees, and costs based on claims for a deficiency judgment against Rockwell Homes and for enforcement of the individual guaranties of the Bissons and Wiswell. Jackson Lumber simultaneously moved for approval of attachment and trustee process against all defendants. It filed a draft order and the affidavit of its chief executive officer and treasurer, who authenticated and attached documentary exhibits. All defendants opposed the motion for approval of attachment and trustee process. Rock Bisson and Wiswell attached their own affidavits with exhibits. Jackson Lumber filed a reply memorandum and a supplemental affidavit from its CEO and treasurer.

[¶7] The court held a nontestimonial hearing in April 2021 and entered an order denying the motion for approval of attachment and trustee process as to the claims for deficiency against Rockwell Homes and for enforcement of the guaranties of the Bissons and Wiswell on the mortgage note for the Lebanon property. The court reasoned that Jackson Lumber had not established a likelihood of success on the merits because when the mortgagee is the

"purchaser at the public sale" of the mortgaged premises, the amount of the deficiency must be determined by comparing the amount owed with the fair market value of the property at the time of the sale, as established by an independent appraisal. 14 M.R.S. § 6203-E. The court regarded mortgagee Jackson Lumber as the "purchaser at the public sale" and concluded that there was no recoverable deficiency given that the appraised value of the Lebanon property ($1,100,000) exceeded the amount owed by Rockwell Homes at the time of the foreclosure ($1,070,918.37). *Id.*

[¶8] Jackson Lumber timely appealed from the denial of its motion for approval of attachment and trustee process as to the claims for a deficiency owed on the Lebanon property and for the enforcement of the individual guaranties of the Bissons and Wiswell. *See* 14 M.R.S. § 1851 (2021); M.R. App. P. 2B(c)(1); *Sweeney v. Hope House, Inc.*, 656 A.2d 1215, 1216 (Me. 1995) ("An order denying a motion for approval of attachment and trustee process is immediately appealable as an exception to the final judgment rule.").

## II. DISCUSSION

[¶9] We review a decision to deny approval of attachment and trustee process for an abuse of discretion or clear error. *See Sweeney*, 656 A.2d at 1216. We will disturb the trial court's findings based on the affidavits only if "the

affidavits contain no competent evidence to support the finding as to the plaintiffs' likelihood of success." *Blanchard*, 2015 ME 101, ¶ 5, 121 A.3d 109 (quotation marks omitted).

[¶10]  Issues of statutory interpretation are, however, reviewed de novo, and the fundamental issue on appeal here is the interpretation of the term "purchaser at the public sale" in 14 M.R.S. § 6203-E.  *See Fleet Nat'l Bank v. Liberty*, 2004 ME 36, ¶ 5, 845 A.2d 1183.  In interpreting a statute, we "look to the plain meaning of the statute, interpreting its language to avoid absurd, illogical or inconsistent results and attempting to give all of its words meaning." *Thurston v. Galvin*, 2014 ME 76, ¶ 13, 94 A.3d 16 (quotation marks omitted).  In doing so, we view "the relevant provisions in the context of the entire statutory scheme to generate a harmonious result."  *Corinth Pellets, LLC v. Arch Specialty Ins. Co.*, 2021 ME 10, ¶ 19, 246 A.3d 586 (quotation marks omitted).  If a statute is unambiguous, we interpret the statute directly without examining legislative history; we "look to legislative history and other extraneous aids in interpretation of a statute only when we have determined that the statute is ambiguous," meaning that it "is reasonably susceptible to different interpretations."  *Thurston*, 2014 ME 76, ¶ 13, 94 A.3d 16 (quotation marks omitted).

[¶11]  The relevant paragraph of section 6203-E provides, "In the event that the mortgagee is the *purchaser at the public sale*, any deficiency is limited to the difference between the fair market value of the premises at the time of the sale, as established by an independent appraisal, and the sum due the mortgagee with interest plus the expenses incurred in making the sale." (Emphasis added.)  This stands in contrast to the ordinary determination of a deficiency by comparing the *sale price* with the sum owed to the mortgagee and adding interest and expenses.  *See* 14 M.R.S. § 6203-E; *cf.* 14 M.R.S. § 6323 (2021) (providing, in the statute governing public sales in foreclosures by civil action,[3] that "[a]ny rights of the mortgagee to a deficiency claim against the mortgagors are limited to the amount established as of the date of the public sale.  The date of the public sale is the date on which bids are received to establish the sales price, no matter when the sale is completed by the delivery of the deed to the highest bidder.").

---

[3]  Although we do not consider the pertinent language of 14 M.R.S. § 6203-E (2021) to be ambiguous, we reference its legislative history in this footnote for the limited purpose of supporting our comparison of that provision with the law governing public sales in foreclosures by civil action. The language in 6203-E was proposed to establish a method for determining the deficiency that parallels the method employed for sales in foreclosures by civil action, 14 M.R.S. §§ 6323-6324 (2021).  *See An Act Regarding Maine's Power of Sale Foreclosure Law: Hearing on L.D. 276 Before the J. Standing Comm. on Judiciary*, 127th Legis. (2015) (testimony of Ben Marcus on behalf of the Maine Credit Union League).  The language of section 6203-E, which tracks the language of section 6324, thus similarly serves as "a protection against a self-dealing mortgagee." *Peoples Sav. Bank v. Spencer*, 482 A.2d 832, 834 (Me. 1984).

[¶12]  Thus, when "(1) the mortgagee is the purchaser at the public sale and (2) the mortgagee seeks a deficiency judgment," the deficiency is determined based on a comparison of the fair market value at the time of the public sale, as established by an independent appraisal, with the amount owed to the mortgagee.  *Key Bank of Me. v. Holman*, 657 A.2d 775, 776 (Me. 1995) (construing the comparable provision in the statute governing a public sale ordered in a foreclosure by civil action).  At issue here is whether Jackson Lumber was the "purchaser at the public sale" even though it did not ultimately acquire the property because it later assigned away its rights under the purchase and sale agreement and never received the deed.  14 M.R.S. § 6203-E.

[¶13]  The term "purchaser," viewed in isolation, means "[s]omeone who obtains property for money or other valuable consideration; a buyer." *Purchaser*, *Black's Law Dictionary* (11th ed. 2019).  The statutory term "purchaser at the public sale" has its own meaning, however, based on its usage in the statutory scheme.  For instance, 14 M.R.S. § 6203-A(5) requires that a purchase and sale agreement be executed "[a]t the completion of a public sale," after which the agreement "may be assigned *by the purchaser*."[4]  (Emphasis

---

[4] Although a purchase and sale agreement need not be executed if the mortgagee is the successful bidder, Jackson Lumber did execute a purchase and sale agreement and then assigned its rights as the "Purchaser" of the property.  *See* 14 M.R.S. § 6203-A(5) (2021).

added.)  That the "purchaser" is authorized to assign the agreement suggests that the successful bidder[5] at the public sale is the "purchaser at the public sale." *Id.* § 6203-E; *see also id.* § 6203-A(5) ("A mortgagee may bid and may purchase any real estate sold at such sale, as long as the mortgagee is the highest bidder."); *cf. id.* § 6323 (providing, in the statute governing public sales in foreclosures by civil action, that "[t]he date of the public sale is the date on which bids are received to establish the sales price, no matter when the sale is completed by the delivery of the deed to the highest bidder").  Thus, the assignee of the purchase and sale agreement may receive the deed even if it is not "the purchaser at the public sale" and might not have even participated in the public sale.  *Id.* § 6203-E; *see also* 14 M.R.S. § 6324 (2021) (referring, in the statute governing sales in foreclosures by civil action, to the real estate "purchased by the highest bidder at the public sale" and a mortgagee that is "the purchaser at the public sale").

[¶14]  Interpreting "purchaser at the public sale" to mean the successful bidder at the public sale is supported by section 6203-E itself, which provides for calculation of the deficiency based on the fair market value "at the time of

---

[5]  We use the term "successful bidder" because "[i]f the highest bidder fails to perform on the agreement, the foreclosing mortgagee may execute a purchase and sale agreement with the next highest bidder."  14 M.R.S. § 6203-A(5).

10

the sale," not the fair market value at the time that money or the deed changes hands. This provision connects a mortgagee that is a "purchaser at the public sale" with the value of the property at the time of that sale. *See id.* § 6203-E.

[¶15] Other statutes use the term "purchaser" rather than "purchaser at the public sale" to describe the entity that ultimately receives the deed. For instance, 14 M.R.S. § 6203-B (2021) requires the recording of an affidavit memorializing the sale "within 30 days after the date of delivery of the deed to the purchaser or the purchaser's agent." This statute notably does not describe the purchaser as the "purchaser *at the public sale.*"[6]  *Id.* § 6203-E (emphasis added). Similarly, 33 M.R.S. § 501-A (2021), which establishes the statutory power of sale, uses the term "purchaser or purchasers" to describe the entity or entities that receive the deed; again, the reference is not to a "purchaser at the public sale," 14 M.R.S. § 6203-E.

[¶16] The statutory scheme at issue therefore supports the trial court's determination: Jackson Lumber, which was the successful bidder at the public sale and the buyer listed on the purchase and sale agreement of the Lebanon

---

[6]  *See also* J. E. Keefe, Jr., Annotation, *What constitutes a "public sale*," 4 A.L.R.2d 575, 575 (1949) ("Generally speaking, the term 'public sale,' as used in statutes . . . means a sale in which the public, upon proper notice, is invited to participate and give full opportunity to bid upon a competitive basis for the property placed on sale, which is sold to the highest bidder."); *Offredi v. Huhla*, 60 A.2d 779, 781 (Conn. 1948) ("A 'public sale' is one made at auction to the highest bidder and at which all persons have a right to come in and bid.").

property, was the "purchaser at the public sale" of that property. 14 M.R.S. § 6203-E. The Superior Court did not misinterpret the law and did not otherwise err or abuse its discretion in denying the motion for approval of attachment and trustee process as to the Lebanon property.

The entry is:

> Order denying the motion for approval of attachment and trustee process related to the $1,300,000 promissory note affirmed.

---

Anthony J. Manhart, Esq. (orally), and Bodie B. Colwell, Esq., Preti Flaherty LLP, Portland, for appellant Jackson Lumber & Millwork, Co., Inc.

James F. Molleur, Esq., and Christopher J. Keach, Esq. (orally), Molleur Law Office, Saco, for appellees Rockwell Homes, LLC, Rock Bisson, and Rock Bisson II

Shea H. Watson, Esq. (orally), and Timothy H. Norton, Esq., Kelly Remmel & Zimmerman, Portland, for appellee Aaron Wiswell

York County Superior Court docket number CV-2019-261
FOR CLERK REFERENCE ONLY